IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARY O.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 20 C 1443 |
| v. | ) |
| | ) Magistrate Judge Gabriel A. Fuentes |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security,[2] | ) |
| | ) |
| Defendant. | ) |

**<u>ORDER</u>**[3]

Before the Court are Plaintiff Mary O.'s motion seeking remand of the Administrative Law Judge's ("ALJ") opinion denying her application for disability benefits[4] (D.E. 20) and the Commissioner's motion to affirm the opinion. (D.E. 25.)

---

[1] The Court in this opinion is referring to Plaintiff by her first name and first initial of her last name in compliance with Internal Operating Procedure No. 22 of this Court. IOP 22 presumably is intended to protect the privacy of plaintiffs who bring matters in this Court seeking judicial review under the Social Security Act. The Court notes that suppressing the names of litigants is an extraordinary step ordinarily reserved for protecting the identities of children, sexual assault victims, and other particularly vulnerable parties. *Doe v. Vill. of Deerfield*, 819 F.3d 372, 377 (7th Cir. 2016). Allowing a litigant to proceed anonymously "runs contrary to the rights of the public to have open judicial proceedings and to know who is using court facilities and procedures funded by public taxes." *Id*. A party wishing to proceed anonymously "must demonstrate 'exceptional circumstances' that outweigh both the public policy in favor of identified parties and the prejudice to the opposing party that would result from anonymity." *Id*., citing *Doe v. Blue Cross & Blue Shield United of Wis*., 112 F.3d 869, 872 (7th Cir. 1997). Under IOP 22, both parties are absolved of making such a showing, and it is not clear whether any party could make that showing in this matter. In any event, the Court abides by IOP 22 subject to the Court's stated concerns.

[2] The Court substitutes Kilolo Kijakazi for her predecessor, Andrew Saul, as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).

[3] On April 22, 2020, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was reassigned to this Court for all proceedings, including entry of final judgment. (D.E. 13.)

[4] The Appeals Council ("AC") subsequently denied review of the opinion (R. 1), making the ALJ's decision the final decision of the Commissioner. *Butler v. Kijakazi*, 4 F.4th 498, 500 (7th Cir. 2021).

**I.     Background**

Plaintiff's alleged onset date ("AOD") of disability is May 7, 2017, which is when she says that abnormalities in her feet as well as back and leg pain prevented her from working as a restaurant manager. (R. 15.) In April 2017 x-rays of Plaintiff's feet revealed moderate-to-marked degenerative changes in several of Plaintiff's toe joints. (R. 412, 416.) On May 10, 2017, surgeon Armen Kelikian, M.D. performed cartiva implant surgery for Hallux rigidus grade III[5] on Plaintiff's left foot. (R. 346.) She was given a boot and compression socks to wear post-surgery and allowed to bear weigh on her foot. (R. 420). At a post-operative examination on June 20, 2017, Plaintiff was cleared to walk, row and swim but told not to run or jump or ride a stationary bicycle. (R. 423.)

Plaintiff had cartiva implant surgery on her right foot on August 9. At her post surgery examination two weeks later, she was cleared to walk and bear weight wearing a post-operative shoe, row, ride a stationary bike, and drive, but not to run or jump. (R. 445.)

Plaintiff had a consultative physical examination in connection with her application for benefits on September 6, 2017. (R. 432.) Ravikiran Tamragouri, M.D., found that Plaintiff had Heberden's nodes on several hand joints,[6] limited toe flexion and extension, that her upper extremity strength and grip strength was 5/5, and that her left and right leg strength was 5/5, but she could not stand on one leg at a time. (R. 426.) She had edema in both legs but was able to walk

---

[5] A cartiva implant is a synthetic cartilage that can be implanted into certain joints to relieve the pain and stiffness of arthritis. Hallux rigidus refers to pain or stiffness in the big toe; Plaintiff had a synthetic cartilage joint implanted into each of her big toes in two separate surgeries. Hallux Rigidus: Treatment, Symptoms & Repair (clevelandclinic.org); Cartiva Implant for Big Toe Arthritis (footankleinstitute.com) *visited on* November 28, 2022.

[6] Heberden's nodes are small bony growths that appear on the joint closest to the fingertip and are a symptom of osteoarthritis of the hands. https://my.clevelandclinic.org/health/symptoms/21829-heberdens-nodes *visited on* November 30, 2022.

50 feet without assistance. (R. 426-27.) Dr. Tamragouri's clinical impressions included inflammatory arthritis, post-surgery right big toe, and depression history. (R. 427-28.) Plaintiff had a consultative psychological examination on September 12. John Brauer, Psy.D., performed a mental status examination on Plaintiff in connection with her claim for benefits, noting that she was not taking any medication or undergoing treatment for any mental health issue. (R. 432.) He concluded that Plaintiff's mental functioning was "grossly intact;" he diagnosed her with "mildly depressed mood specifically related to her current physical and financial stressors." (R. 435.)

The next medical records are from February 13, 2018, when Plaintiff had X-rays of her feet after complaining of pain; the imaging revealed presumed postoperative changes on her right big toe and similar results on her left toe that had been present on her prior examination. (R. 465.) Plaintiff also had "significant degenerative changes involving the first metatarsophalangeal joints of her toes. She was prescribed Tylenol and referred to a rheumatologist. (R. 468.)

Plaintiff visited the Pain & Spine Institute on April 18, 2018, complaining of lower back pain that radiated to her lower legs and feet. (R. 601.) Samir Sharma, M.D., examined Plaintiff and noted decreased range of motion and pain with back flexion, tenderness in her lumbar spine, and a positive straight-leg test. (R. 601.) He prescribed a muscle relaxant. (R 602.) A subsequent MRI in June 2018 revealed a bulging disc in Plaintiff's lumbar spine with superimposed herniation. (R. 591.) Plaintiff saw Dr. Sharma again in June and July 2018; at both examinations he noted that her back appeared normal on inspection, that she had lumber and sacral tenderness, a light touch and pain sensation deficit, 5/5 strength in her lower extremities, limited range of motion in her back, and a positive left straight leg raising test. (R. 595.) He again diagnosed her with lower back pain and radicular syndrome of lower limbs and refilled her prescription of a muscle relaxant and

3

Norco (narcotic pain medication). (R. 595-96.) After the June examination he recommended Plaintiff have an epidural injection in her lumbar spine. (R. 598.)

The medical record contains opinions from four agency doctors - an initial physical opinion dated September 29, 2017, an initial psychological opinion dated September 27, 2017, and reconsideration on January 27, 2018 (mental) and February 27, 2018 (physical). With respect to the physical opinions, Richard Bilinsky, M.D. determined that Plaintiff's impairments - which he listed as Hallux Rigidus, bilateral inflammation of both feet, arthritis in both hands, abscess in Plaintiff's right leg,[7] and left Achilles tendon strain - were non-severe because they were not projected to last more than 12 months from their onset date. (R. 85.) Specifically, Dr. Bilinsky pointed to the examination findings of the consultative examiner and noted that Plaintiff had undergone two foot surgeries as well as an April 2017 X-ray of her feet that showed degenerative changes in various joints that ranged from mild to marked. He concluded that Plaintiff's impairments were resolving. (*Id.*)

Kathleen O'Brien, Ph.D., opined that Plaintiff did not have any severe mental health impairments because she was not receiving any mental health treatment and all of her medical treatment concerned her physical impairments. (R. 86.) Dr. O'Brien acknowledged that the consultative examiner had diagnosed Plaintiff with depression but opined that given her lack of treatment, several unremarkable mental status examinations, and her various activities of daily living, her depression was not severe. (*Id.*) In her request for reconsideration in January 2018, Plaintiff alleged that her depression and pain had gotten worse. (R. 91.) The medical evidence reviewed on reconsideration did not include any medical records past February 17, 2018. (R. 94.)

---

[7] Plaintiff does not allege any error with respect to the ALJ's treatment of her leg abscess.

4

Doctor Calixto Aquino and M.W. Difonso, PsyD., concurred, again stating that Plaintiff's impairments were not projected to last longer than 12 months. (R. 96.)

Dr. Kelikian completed a physical residual function capacity ("RFC") opinion on September 18, 2018. (R. 587-88.) He reported that he had seen Plaintiff for the first time on February 17, 2017, and that she had diagnoses of foot and back arthritis. (R. 587.) Dr. Kelikian opined that Plaintiff could not walk any number of city blocks without rest or severe pain, that she could sit or stand for 20 minutes at a time and walk for 10 minutes at a time, and that she could sit, stand or walk for a total of less than two hours in an eight-hour workday. (*Id.*) Dr. Kelikian also wrote the Plaintiff would need to take unscheduled breaks every 30 minutes to elevate her legs for up to 50 percent of an eight-hour workday, that she was unable to lift 10 pounds, and that she would miss more than four days per month because of her symptoms. (*Id.*)

## II. Hearing Testimony

At the hearing on October 2, 2018, Plaintiff asked to be allowed to elevate her leg, explaining that Dr. Kelikian ordered that she be allowed to do so at her most recent visit with him a month earlier. (R. 36.) On questioning from the ALJ, she explained that she first saw Dr. Kelikian in February 2017, that he performed surgeries on both of her toes, that she saw him again in February 2018 and then in September 2018. (R. 38.) After being sworn in, she testified that she had arthritis in her hands but did not receive any treatment for them. (R. 39.) She testified that she suffers from severe back and foot pain that prevents her from being able to stand or sit for long periods of time. (R. 53.) On questioning from the ALJ, Plaintiff testified that she did not know why her doctor cleared her to do most physical activity besides running and jumping after her second toe surgery, because in addition to her toe problems, she also had arthritis in her feet that made it difficult for her to stand and walk. (R. 54.) After visiting a pain clinic in April 2018,

Plaintiff began taking Norco as well as a muscle relaxer, just to get through her day. (R. 57.) She said she is unable to do any chores around the house other than making simple meals, which she does sitting down (*Id.*) Plaintiff also testified that she did not get the epidural injections recommended by the pain specialist she saw because they were too expensive; she also testified that she paid out of pocket to see Dr. Kelikian because he was not covered by her insurance, and she liked him the best. (R. 59.) Dr. Kelikian had reviewed her recent back MRI but had never treated her for back problems. (R. 67.)

With respect to activities, Plaintiff liked to read, talk on the phone with friends, and occasionally go out to dinner or to the movies. (R. 61-62.) She was able to drive short distances before it became too painful; her mother drove her to the hearing. (*Id.*) She testified that other than taking pain medication and wearing orthotics in her shoes, she had not had treatment for her pain at least since the beginning of 2018, and that she had spoken to a physical therapist but was unable to begin treatment because she was too weak to go. (R. 56, 63.) She had an upcoming appointment to see a rheumatologist but had not gone to one at the time of the hearing.[8]

## III. ALJ Opinion

In her opinion, the ALJ found that Plaintiff had the medically determinable impairments of dysfunction of major joints, inflammatory arthritis, chronic skin infection, left Achilles heel strain, lumbar spine issues, and depression, but that none of them were severe because none of the impairments, singly or in combination, had limited or were expected to limit Plaintiff's ability to perform basic work activities for 12 consecutive months. Therefore, she found Plaintiff not disabled at Step Two of the sequential analysis (R. 18.)

---

[8] A vocational expert ("VE") also testified at the hearing, but because the ALJ dismissed Plaintiff's claim at Step Two, she did not provide an RFC or rely on anything the VE said in making her determination.

After describing the Plaintiff's testimony about her pain, treatment (including the fact that she paid out of pocket to see Dr. Kelikian, but could not afford epidural injections), and her activities of daily living, and stating that such testimony was not entirely consistent with the medical evidence, the ALJ found that each of Plaintiff's impairments either had resolved or would resolve in less than 12 months, and thus imposed no more than minimal limitations on her ability to work. Specifically, with respect to each of Plaintiff's impairments, the ALJ found as follows:

- Her major joint dysfunction was non-severe because Plaintiff had fully healed from both surgeries on her toes and she was cleared to do all activities other than running and jumping, and did not submit further records from her doctor showing continued problems. (R. 19.)

- Her arthritis was non-severe because Plaintiff received no treatment for it and did not attempt to go to physical therapy. The few physical indications she had (such as nodules on her hands) were mild, and she had normal grip strength and ROM and ability to walk 50 feet without assistance. (R. 20.)

- Her chronic skin infection was non-severe because it was a temporary unhealed wound that resolved despite Plaintiff's failure to use antibiotic cream. (*Id.*)

- Plaintiff's alleged Achilles tendon strain occurred before her AOD. She had some tenderness on exam but also full ROM and ability to walk at least 50 feet, and no other complaints about it. (*Id.*)

- Plaintiff's lumbar spine issues were non-severe because Plaintiff did not begin to complain of back pain until after her AOD, after which she complained of low back pain, had deficits with deep tendon reflexes, decreased ROM, a positive straight leg test and tenderness in her lumbar spine. But the ALJ also noted that Plaintiff had a normal gait, 5/5 strength, that

7

- her lower back appeared normal on inspection by the pain doctor and that during her consultative examination she had full ROM but some crepitus with movement, a negative straight leg raise, and walked 50 feet. The ALJ also stated that at Plaintiff's appointments with the pain specialist in June and July 2018 she denied any new axial or radicular pain symptoms. The ALJ acknowledged Plaintiff's MRI results but noted that she did not receive recommended epidural injections because of the cost, although Plaintiff offered no evidence indicating that she sought low-cost treatment for her back. Further, the ALJ noted that Plaintiff could participate in certain activities, about which she had testified. (R. 21.)

- Plaintiff's depression was non-severe because although she was diagnosed with it, a number of her several mental status exams were normal and do not mention depression. Further, Plaintiff had no history of treatment or medication for mental health issues and the ALJ found that Plaintiff had either no, or at most mild, limitations in the Paragraph B factors. (R. 21-22.)

Next, the ALJ explained that she accepted the medical opinions of the state agency doctors, who found that none of Plaintiff's impairments were severe because they would not last at least 12 months, finding that the state agency doctors properly based their opinions on Plaintiff's unremarkable physical examinations, her healing after surgery, and her lack of treatment. (R. 23.) The ALJ gave no weight to Dr. Kelikian's opinion because it was inconsistent with the medical records (including his own treatment notes) that allowed the Plaintiff to do many more physical activities than the opinion. Moreover, Dr. Kelikian did not treat Plaintiff's back issues and thus was not qualified to opine on her ability to sit and stand, and his notes do not suggest the need to elevate her legs other than immediately post-surgery. (*Id.*)

**II.    Legal Standard**

An ALJ's decision will be affirmed if it was supported by "substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, ⸺ U.S. ⸺, 139 S. Ct. 1148, 1154, 203 L.Ed.2d 504 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* In making this determination, "[w]e will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). "Rather, this court asks whether the ALJ's decision reflects an adequate logical bridge from the evidence to the conclusions." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022) (internal quotations omitted). The ALJ here found that Plaintiff did not have a severe impairment at Step Two of the sequential analysis. Therefore, she did not address the remaining analytical steps, including whether Plaintiff's impairments met a Listing, whether she was able to perform her past work, or, if she was not able to perform her past work, whether her residual functional capacity allowed her to work at other jobs that existed in significant numbers in the economy.

**III.    Analysis**

At Step Two of the disability evaluation process, an ALJ determines whether a claimant's medically determinable impairments, individually or in combination, are "severe." (*See generally*) *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010); 20 C.F.R. § 404.1521. A severe impairment is an impairment or combination of impairments that "significantly limit[s] [one's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a). The regulations implementing the Social Security Act state that "basic work activities" include walking, standing, sitting, pushing, and handling; understanding, carrying out, and remembering simple instructions; and responding appropriately to supervision and co-workers. *See* 20 C.F.R. §

404.1522(b). In addition to the requirement that they be "severe," the impairment or impairments must have lasted, or be expected to last, for a continuous period of at least 12 months, or they must be expected to result in death. *See* 20 C.F.R. §§ 404.1509; 404.1520(a)(4)(ii).

Generally, "the step two determination of severity is 'merely a threshold requirement.'" *Castile v. Astrue,* 617 F.3d 923, 926–27 (7th Cir. 2010) (citation omitted; quoting *Hickman v. Apfel,* 187 F.3d 683, 688 (7th Cir. 1999)). *See also Bowen v. Yuckert,* 482 U.S. 137, 149–50, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987) (disability insurance benefit payments require a "threshold showing of medical severity.) That is, "[a]s long as the ALJ determines that the claimant has one severe impairment, the ALJ will proceed to the remaining steps of the evaluation process...." *Id.*

In this case, however, the ALJ ended her analysis at Step Two after finding that Plaintiff had no severe impairments. Therefore, we must consider more carefully the ALJ's Step Two determination that none of Plaintiff's impairments caused more than a minimal effect on her ability to perform basic work activities and that none of them were likely to last at least 12 months. And when we take a closer look, we find that the ALJ's treatment of one of Plaintiff's impairments - that concerning her lumbar spine - was not supported by substantial evidence.

The ALJ based her determination that Plaintiff had no severe impairments on the grounds that they all would resolve, or already had resolved or improved to the point that they would no longer affect her ability to work, and also because this determination was supported by the non-examining Agency doctors. The problem is that neither of those determinations, when applied to Plaintiff's back problems, is supported by substantial evidence.

10

Plaintiff first visited a pain specialist to complain about her back in April 2018, *after* the Agency doctors had completed their review of the earlier medical records. Therefore, their opinions that Plaintiff did not have any severe impairments, (and the related conclusion that none of her impairments would last more than 12 months), could not have accounted for or considered her lumbar spine issues. This means that the Agency opinions cannot constitute substantial evidence to support the ALJ's opinion concerning Plaintiff's back pain or its likelihood of her lumbar spinal problems lasting more than 12 months.

And although the ALJ discusses the medical records concerning Plaintiff's back, her analysis does not address whether - given MRI imaging revealing a bulging disc and other deficits - this impairment was "improving" as the ALJ had found for Plaintiff's other impairments, or otherwise likely to last more than 12 months. Indeed, the ALJ could not come to such a conclusion on her own without "playing doctor," and thus her determination that Plaintiff's back issues were non-severe was not supported by substantial evidence. *K.M.O. v. Berryhill,* No. 17 C 8931, 2019 WL 13208498, at *3) (N.D. Ill. Feb. 1, 2019) (finding that ALJ impermissibly "played doctor" by interpreting MRI results to determine Plaintiff's impairment would not last for 12 months.) In so finding, we acknowledge the ALJ's discussion on Plaintiff's back complaints, treatment (and failure to obtain treatment), and the reasons not to accept Dr. Kelikian's opinion about Plaintiff's limitations. But although these factors may constitute evidence that Plaintiff's back impairment was less severe than she alleged, they do not speak to the Step Two question of whether her back impairment was severe at all. And given that a finding of severity is a threshold requirement, we cannot hold that the ALJ's finding of non-severity with respect to Plaintiff's back problems was supported in this case.

## CONCLUSION

For these reasons, the Court grants Plaintiff's motion to remand (D.E. 20) and denies Defendant's motion to affirm (D.E. 25).

**ENTER:**

**GABRIEL A. FUENTES**
**United States Magistrate Judge**

**DATED: December 9, 2022**